Kevin W. Roberts, ISB #6305
Chad H. Freebourn, ISB #11158
ROBERTS | FREEBOURN, PLLC
120 N. Stevens St., Suite 300
Spokane, WA 99201
Phone: (509) 381-5262
kevin@robertsfreebourn.com
chad@robertsfeebourn.com
*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALLAN KINGSLEY WOOD, an individual; <br><br> Plaintiff, <br><br> v. <br><br> RED HAT, INC., a North Carolina corporation and subsidiary of IBM; <br><br> Defendant. | Case No. 2:24-cv-237 <br><br><br> **COMPLAINT** <br><br><br> **[JURY TRIAL DEMANDED]** |

1.    Plaintiff Allan Kingsley Wood ("Mr. Wood" or "Plaintiff") was a loyal, dedicated, and skilled employee of eight years who performed the role of Senior Director for Defendant Red Hat.

2.    Though he was an exemplary employee and on a fast track to becoming an executive, Plaintiff became a victim of Red Hat's discriminatory employment policies and was punished for criticizing the same.

3.    The newest corporate trend is implementing what's referred to as "Diversity, Equity, and Inclusion" ("DEI") policies. Ironically, these policies promote discrimination in the

name of anti-discrimination, punish certain ethnicities in the name of diversity, and reward skin color over merit. Corporations aim for certain "quotas" in terms of ethnicity and gender in the workforce, which inherently necessitates prioritizing skin color and race as primary hiring factors. In essence, Red Hat is using "diversity" as a license to discriminate.

4.     In violation of multiple federal and state laws, Red Hat engaged in discrimination against Plaintiff on the basis of race, color, religion, and sex.

## PARTIES

5.     Plaintiff Allan Kingsley Wood ("Mr. Wood" or "Plaintiff") is an individual and citizen of Idaho. Mr. Wood is a Caucasian/white male. Mr. Wood was employed as a Senior Director at Red Hat from 2015 through 2023. He was subjected to discriminatory treatment and terminated because of Red Hat's DEI policies.

6.     Red Hat ("Defendant") is a software company that provides open-source software products to enterprises. Red Hat is a subsidiary of IBM.

7.     Defendant employs more than 19,000 employees worldwide.

8.     Defendant is organized under the laws of North Carolina with its headquarters located at 100 E. Davie Street, Raleigh, North Carolina.

9.     Defendant has more than 95 offices in more than 35 countries.

10.     At all times material hereto, Plaintiff worked for Defendant from his home in Idaho.

11.     At all times material hereto, Defendant employed more than fifteen (15) employees.

12.     At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

13.     At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this Complaint.

14.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes that form the basis of this Complaint.

## JURISDICTION AND VENUE

15.      This Court has original jurisdiction over the subject matter of this dispute pursuant to 28 United States Code ("U.S.C.") Section 1331. Plaintiff seeks remedies under Title VII of the Civil Rights Act pursuant to 42 U.S.C. § 2000e et seq.

16.     This Court has supplemental jurisdiction over the state claims raised in this matter pursuant to 28 U.S.C. Section 1367.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

18.     On February 7, 2024, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") complaining of acts of discrimination alleged herein. Attached hereto, incorporated herein and marked as "Exhibit A" is a true and correct copy of the EEOC Charge.

19.     On February 8, 2024, the EEOC issued to Plaintiff a Notice of Right to Sue for his Charge. Attached hereto and marked as "Exhibit B" is a true and correct copy of the Notice.

20.     Plaintiff has fully exhausted all administrative remedies and prerequisites for the commencement of this action.

21.      An actual and justiciable controversy exists between Plaintiff and Defendant.

## FACTS AND BACKGROUND

22.     Plaintiff began his employment with Red Hat in 2015. He held the position of Senior Director for several years and worked at Red Hat's location in Singapore.

23.     In 2021, in response to stringent COVID-19 policies in Singapore, Mr. Wood requested to be transferred to a position in the United States. Red Hat approved his transfer on September 23, 2021, and coordinated Mr. Wood's move to the United States.

24.     Upon his arrival in the United States, Mr. Wood was required to work from home due to his refusal to take a COVID-19 vaccine. Mr. Wood had sought an exemption and accommodation on religious grounds. His exemption was approved, and as an accommodation, Red Hat imposed the restriction that Mr. Wood was required to work from home.

25.     Upon returning to the United States, Mr. Wood conducted his work from his home in Idaho and began his U.S.-based role on October 1, 2021, as Senior Director of the North American Office of Technology - Technical Sales, West Region, North America.

26.     Mr. Wood was an exemplary employee. He had never received a negative review, was highly lauded, had a stellar record, and was on a path to become one of the top executives at Red Hat.

27.     At all material times, Plaintiff received overwhelmingly positive performance evaluations.

**Defendant's DEI Policies**

28.     Beginning in 2021, Red Hat began implementing a number of discriminatory policies and goals centered around diversity, equity, and inclusion ("DEI") initiatives in the workplace.

29.     In accordance with this effort, Red Hat hired Shuchi Sharma to act as the Chief Executive Officer of DEI to spearhead these programs, which included holding mandatory trainings and implementing policies aimed at achieving diversity goals.

30.     Indeed, Red Hat has made it clear that it is in favor of discriminatory policies that the Supreme Court has found unconstitutional. In the case of *Students for Fair Admissions (SFFA) v. Harvard,* decided together with *SFFA v. University of North Carolina*, Red Hat, along with 70 other corporations, filed an amicus brief with the U.S. Supreme Court in support of affirmative action. In an August 2, 2022, email, Red Hat boasted of the company's involvement in this effort to its employees, claiming that Red Hat was "proud to join this effort to ask the U.S. Supreme Court to continue to **allow colleges to consider race, as one of many factors, in admissions so that colleges can produce a diverse pipeline of graduates**." *See* Exhibit C (emphasis added).

31.     In an historic decision, the U.S. Supreme Court struck down affirmative action in June 2023. The Supreme Court ruled that the affirmative action admissions programs used by the University of North Carolina and Harvard College violated the Constitution's equal protection clause, which bars racial discrimination.

32.     However, Red Hat's promotion of unconstitutional and discriminatory practices demonstrates their attitude towards such discrimination in regard to employment decisions.

33.     Despite the Supreme Court's ultimate decision, Red Hat continued to implement its DEI policies that engage in the same or worse discriminatory practices as affirmative action.

34.     On several occasions, managers and executives at Red Hat in comments to Mr. Wood and other employees expressed their dismay at the lack of diversity in the workforce and their desire to achieve certain ratios in the workforce based on race and gender.

35.    Red Hat executives indicated that these DEI initiatives would influence certain hiring and employment decisions.

36.    Because of his religious, political, and personal views, Mr. Wood was vocal about his opposition to these discriminatory policies and continuously advocated for hiring based on merit and skill rather than other immutable characteristics.

37.    Several managers took issue with Mr. Wood's opinions and expressed their strong disagreement.

38.    Mr. Wood felt that he was being targeted, marked, and labeled as an undesirable employee for voicing his opinions in opposition to Red Hat's DEI policies.

39.    Red Hat made express statements, both vocally and in writing at company events, that were derogatory towards white individuals and presented an anti-white agenda. Red Hat also remarked on the low number of women employed and expressed anti-male rhetoric. Red Hat made it clear that it was going to implement heightened DEI policies, with the sole intent of increasing diversity.

40.    At a kickoff event in Texas, Red Hat announced its "Bold DEI Goals." These goals included quotas. Red Hat sought to remake its workforce demographic, seeking to reach 30% women globally and 30% associates of color in the United States by 2028.[1] *See* Exhibit D.

41.    Just two weeks after this announcement, Mr. Wood was informed on July 17, 2023, by his manager, Jason Corey, that his role was being eliminated, following several months of discriminatory treatment.

---

[1] Graphic available at https://twitter.com/JamesOKeefeIII/status/1735071740076712029

42.    Mr. Wood understood that he would be terminated from his position along with 21 other individuals. Upon information and belief, 21 of the total 22 individuals were white, and 21 were male.

43.    Mr. Wood felt that his termination was a direct result of Red Hat's DEI policies and efforts to diversify the workforce, and therefore, he was directly discriminated against because of his race, religion, and gender. Mr. Wood expressed this assumption to his superiors, informing them that he believed they were discriminating against him on these bases.

44.    Prior to his official termination, Red Hat continued to discriminate against Mr. Wood. For example, Mr. Wood applied for and, upon producing documented proof of an ongoing family health emergency, was granted leave under the Family Medical Leave Act ("FMLA") on July 24, 2023, to take care of his ill wife . However, although his FMLA request was granted and Mr. Wood was entitled to three months of leave, Red Hat cut off his leave just four days later on July 28, 2023, to proceed with his termination, and his FMLA claim was officially closed on August 20, 2023. At the same time, Mr. Wood's medical coverage was suspended, and he was forced to reinstate it at his own expense.

45.    Mr. Wood was officially terminated from Red Hat as of September 20, 2023. Red Hat discriminated against him on the basis of his religious beliefs, race, color, and gender, as well as retaliated against him for voicing his opinions regarding Red Hat's discriminatory DEI policies.

46.    Defendant's stated reason was a pretext for racial and sex discrimination.

47.    Plaintiff was terminated, as demonstrated by Red Hat's admitted goals of altering the diversity quotas of employees, thereby targeting white employees, as a direct result of his race.

48.     Furthermore, Plaintiff was terminated, as demonstrated by Red Hat's admitted goals of increasing the number of female employees, thereby targeting male employees, as a direct result of his sex.

49.     Plaintiff's complaints of discrimination and overall criticism of Red Hat's DEI initiatives, a protected activity, were a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including without limitation, in connection with his termination.

50.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

51.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

52.     Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights.

53.     The conduct of Defendant, as set forth above, was outrageous and warrants the imposition of punitive damages against Defendant.

54.     Plaintiff suffered irreparable injury and monetary damages as a result of Defendant's discriminatory acts.

## FIRST CAUSE OF ACTION
### Racial Discrimination
**[Violation of Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e et seq.]**

54.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

55.     Title VII prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

56.     Red Hat's above-described conduct and repeated acts of discrimination targeting Plaintiff for termination on the basis of his race violates Title VII.

57.     The violations articulated in this complaint were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant an award of punitive damages.

58.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Gender Discrimination
**[Violation of Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e et seq.]**

60.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

61.     Title VII prohibits employment discrimination on the basis of sex. 42 U.S.C. § 2000e-2(a)(1).

62.     Red Hat's above-described conduct of targeting Plaintiff for termination on the basis of his sex and repeated acts of discrimination violates Title VII.

63.     The violations articulated in this complaint were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant an award of punitive damages.

64.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### Retaliation
**[Violation of Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e et seq.]**

66.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

67.     Title VII also prohibits retaliation against an employee for engaging in protected activity and opposing an unlawful practice that is prohibited by Title VII. 42 U.S.C. § 2000e-3(a).

68.     Plaintiff engaged in protected employee activity by raising legitimate complaints to executives and employees at Red Hat concerning Defendant's discriminatory DEI policies and practices.

69.     Plaintiff advocated on numerous occasions for merit-based hiring decisions rather than selecting or promoting individuals based on immutable characteristics such as race or sex.

70.     Red Hat's above-described conduct of targeting Plaintiff for termination for expressing his views on racially discriminatory company policies violates Title VII.

71.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

72.     As a result of raising these concerns, Plaintiff was subject to punitive treatment in the form of denial of FMLA benefits and termination.

73.     There is a direct connection between the employee's protected activity and Defendant's discriminatory actions.

**FOURTH CAUSE OF ACTION**
**Racial Discrimination**
**[Violation of 42 U.S.C. § 1981]**

74.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

75.    42 U.S.C. § 1981(a) states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

76.    Section 1981 applies to employment contracts.

77.    In its quest to achieve its DEI goals, Red Hat intentionally discriminated against Mr. Wood on the basis of his race. Mr. Wood's race (white) was a "but for" reason or determinative factor in Red Hat's decision to terminate Plaintiff from his position.

78.    As demonstrated by Red Hat's DEI policies and the disproportionate number of white employees that Red Hat elected to terminate, Red Hat clearly acted with the intent to discriminate on the basis of race.

79.    Red Hat intentionally discriminated against Mr. Wood on the basis of his race. But for Red Hat's racial discrimination against Mr. Wood, he would not have been terminated.

**FIFTH CAUSE OF ACTION**
**Violation of Family Medical Leave Act**
**[Violation of 29 U.S.C. §2601, et seq.]**

80.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

81.     FMLA, 29 U.S.C. § 2615(a)(1) makes it unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided by the FMLA.

82.     Mr. Wood was eligible for FMLA benefits and, at all relevant times, was an "eligible employee" as defined by 29 U.S.C. § 2911(2)(A)(i)-(ii).

83.     Red Hat is a covered employer under the FMLA.

84.     The FMLA, 29 U.S.C. §2612(a)(1) allows "eligible" employees of "covered" employers to take a total of 12 weeks of leave during any 12-month period to "care for a spouse, son, daughter, or parent who has a serious health condition."

85.     Under the FMLA, 29 U.S.C. §2612(a)(2) an eligible employee may also take up to 26 weeks of leave during a single 12-month period to care for a covered service member with a serious injury or illness when the employee is the spouse, son, daughter, parent, or next of kin to the service member.

86.     Mr. Wood's spouse had a "serious health condition" as defined by the FMLA, 29 U.S.C. § 2611(11).

87.     Mr. Wood gave Red Hat reasonable notice of his need for leave.

88.     Red Hat interfered with Mr. Wood's right to take FMLA leave by refusing to allow Mr. Wood to receive all of the FMLA benefits to which he was entitled and terminating Mr. Wood.

89.     Mr. Wood was thereby denied benefits and rights to which he was entitled in violation of FMLA and has suffered damages as a result.

## **Demand for Jury Trial**

Plaintiff hereby demands a jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

a)    A declaration that Defendant discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964;

b)    A declaration that Defendant discriminated against Plaintiff in violation of 42 U.S.C. § 1981;

c)    A declaration that Defendant violated the Family Medical Leave Act;

d)    Enjoin and permanently restrain the violations alleged herein;

e)    Award compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, which Plaintiff has suffered as a result of Defendant's improper and discriminatory conduct;

f)    Award compensatory damages to Plaintiff for past pain and suffering, emotional distress, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered as a result of Defendant's improper and discriminatory conduct;

g)    Award compensatory and punitive damages to Plaintiff under Title VII;

h)    Award compensatory and punitive damages to Plaintiff under 42 U.S.C. § 1981;

i)    An order that Plaintiff be awarded other such damages as are appropriate pursuant to applicable federal or state law;

j)    An order that Defendant pays Plaintiff's costs associated with bringing this lawsuit, including his reasonable attorneys' fees and costs; and

k)    A grant of any such further relief as the Court deems necessary and proper in the public interest.

//

//

//

DATED: May 8, 2024

Respectfully submitted,

ROBERTS | FREEBOURN, PLLC


*/s/ Chad H. Freebourn*
_____

Kevin W. Roberts, ISB #6305
Chad H. Freebourn, ISB #11158
*Attorneys for Defendant*

Robert E. Barnes, Esq.
*Subject to admission pro hac vice*
TX Bar No. 24127016
Lexis Anderson, Esq.
*Subject to admission pro hac vice*
CA Bar No. 235010
BARNES LAW LLP
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 510-6211
Facsimile: (310) 510-6225
Email: lexisanderson@barneslawllp.com
Email: robertbarnes@barneslawllp.com

Nicholas R. Barry
*Subject to admission pro hac vice*
TN Bar No. 031963
Jacob Meckler
*Subject to admission pro hac vice*
Washington DC Bar No. 90005210
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave., SE #231
Washington, DC 20003
Telephone: (202) 964-3721
nicholas.barry@aflegal.org

*Attorneys for Plaintiff Allan Kingsley Wood*

14

# EXHIBIT A

## CHARGE OF DISCRIMINATION

Allan Kingsley Wood files this charge of discrimination against Red Hat, his former employer, alleging religious discrimination, racial discrimination, gender discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and other relevant statutes.

Mr. Wood began his employment with Red Hat in 2015. He held the position of Senior Director in Singapore for several years. In 2021, in response to the COVID-19 policies in Singapore, Mr. Wood requested to be transferred to a position in the United States. Red Hat approved his transfer on September 23, 2021 and paid for all moving expenses. Mr. Wood was authorized to work remotely from his home in Idaho and began his US-based role on October 1, 2021.

Mr. Wood was an exemplary employee. He had never received a negative review, was highly lauded, had a stellar record, and was on a path to become one of the top executives at Red Hat. Despite his impressive career, Mr. Wood was terminated from his employment in September 2023 following several months of discriminatory treatment.

Beginning in 2021, Red Hat implemented a number of discriminatory policies and goals centered around diversity, equity, and inclusion (DEI) in the workplace. On several occasions, managers and executives at Red Hat, including the company's new DEI Manager Shuchi Sharma, had made comments to Mr. Wood and other employees expressing their dismay at the lack of diversity in the workforce and desire to achieve certain ratios in the workforce based on race and gender. Because of his religious, political, and personal views, Mr. Wood was vocal about his opposition to these discriminatory policies and continuously advocated for hiring based on merit and skill rather than other immutable characteristics. Several managers took issue with Mr. Wood's opinions and expressed their strong disagreement. Mr. Wood felt that he was being targeted, marked, and labeled as an undesirable employee by voicing his opinions.

Red Hat made express statements, both vocally and in writing at company events, that were derogatory towards white individuals and presented an anti-white agenda. Red Hat also remarked on the low number of women employed and expressed anti-male rhetoric. Red Hat made it clear that it was going to take steps to take DEI policies to the next level, with the sole intent of increasing diversity. For example, in June 2023, at a company meeting, Red Hat announced its "Bold DEI Goals" of achieving in its workforce 30% women globally and 30% associates of color in the United States by 2028.

Just two weeks after this announcement, Mr. Wood was informed on July 17, 2023 by his manager, Jason Corey, that his role was being eliminated. Mr. Wood understood that he would be terminated from his position along with 21 other individuals, 20 of which were white males like Mr. Wood. Mr. Wood felt that his termination was a direct result of Red Hat's DEI policies and efforts to diversify the workforce, and therefore, he was directly discriminated against because of his race, religion, and gender. Mr. Wood expressed this assumption to his superiors, informing them that he believed they were discriminating against him on these bases.

1

Prior to his official termination, Red Hat continued to discriminate against Mr. Wood. For example, Mr. Wood applied for and, upon producing documented proof of an ongoing family health emergency, was granted leave under the Family Medical Leave Act ("FMLA") on July 24, 2023, to take care of his ill wife. However, although his FMLA request was granted and Mr. Wood was entitled to three months leave, Red Hat cut off his leave just four days later on July 28, 2023 to proceed with his termination. At the same time, Mr. Wood's medical coverage was suspended, and he was forced to reinstate it at his own expense.

These events follow a prior dispute between Mr. Wood and Red Hat regarding Red Hat's COVID-19 vaccine mandate, to which Mr. Wood held sincere religious objections and staunchly opposed. Although Red Hat ultimately granted Mr. Wood's religious exemption request after legal intervention, Mr. Wood felt as though he was being noticed and marked due to his personal beliefs.

Mr. Wood was officially terminated from Red Hat as of September 20, 2023. Mr. Wood alleges that Red Hat discriminated against him on the basis of his religious beliefs, race, color, and gender, as well as retaliated against him for voicing his opinions regarding Red Hat's discriminatory DEI policies.

## COMPLAINANT VERIFICATION

I, Allan Kingsley Wood, am over the age of eighteen years and am a former employee of Red Hat. The statements and allegations that pertain to me or which I make in this CHARGE OF DISCRIMINATION are true and correct and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Idaho, that the foregoing statements are true and correct to the best of my knowledge.

Dated: February 6, 2024

DocuSigned by:

*allan kingsley Wood*

9GF78DSE2AAC459

Allan Kingsley Wood

# EXHIBIT B



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Seattle Field Office**
909 First Avenue, Suite 400
Seattle, WA 98104
(206) 576-3000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/08/2024

To: Allan K. Wood
456 Laura Lane
Sagle, ID 83860
Charge No: 551-2024-02492

EEOC Representative and email:    Logan Payne
Investigator Support Assistant
logan.payne@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 551-2024-02492.

On Behalf of the Commission

February 8, 2024                                                      for
Date                          Elizabeth M. Cannon, Director
                              Seattle Field Office

cc:

Red Hat, Inc.: Tom Savage, SVP & General Counsel (tsavage@redhat.com); Shuchi Sharma, VP and Chief DEI Office (ssharma@redhat.com); Jennifer Dudeck, SVP & CPO (jdudeck@redhat.com)

Barnes Law, LLP: Lexis Anderson, Associate Attorney (lexisanderson@barneslawllp.com)

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 551-2024-02492 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Nancy A. Sienko, 450 Golden Gate Avenue 5 West PO Box 36025, San Francisco, CA 94102.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 551-2024-02492 to the District Director at Nancy A. Sienko, 450 Golden Gate Avenue 5 West PO Box 36025, San Francisco, CA 94102.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# EXHIBIT C



**Kingsley Wood <elympia@gmail.com>**

---

## Fwd: Red Hat joins brief defending affirmative action in higher education

---

**Kingsley Wood** <kwood@redhat.com>
To: Kingsley Wood <elympia@gmail.com>

Tue, Aug 2, 2022 at 7:15 AM

**Kingsley Wood**
Senior Director, North America Office Of Technology
kwood@redhat.com
M: +1.425.520.8392



---------- Forwarded message ---------
From: **David Perry** <dbp@redhat.com>
Date: Tue, Aug 2, 2022 at 5:40 AM
Subject: Red Hat joins brief defending affirmative action in higher education
To: <announce-list@redhat.com>

Dear friends and colleagues,

As we all continue to work toward our shared mission to make Red Hat a safe, inclusive place for all associates and increase the equitable representation of marginalized populations, I wanted to let you know that Red Hat has joined nearly 70 other companies, including Apple, Cisco, Google, and Meta, in filing a new friend-of-the-court (aka "amicus") brief with the U.S. Supreme Court that supports this mission by defending the constitutionality of affirmative action programs in higher education.

Our brief, filed yesterday, provides data showing that racial and ethnic diversity enhances the business performance of companies like Red Hat. As the brief states: "Diversity encourages the search for novel information and perspectives, leading to better decision-making and problem-solving, and exposure to diversity can change the way you think." And our brief contends that in the technology industry, diversity helps fuel innovation: "A diverse pipeline of graduates in disciplines such as science, technology, engineering, and mathematics ("STEM") is not only a worthy goal in itself, it is also essential to the success of science and technology companies. Racial and other diversity improves scientific endeavors and the innovation of new technologies."

The brief marks the largest ever business coalition amicus brief in support of affirmative action, and Red Hat is proud to join this effort to ask the U.S. Supreme Court to continue to allow colleges to consider race, as one of many factors, in admissions so that colleges can produce a diverse pipeline of graduates.

For those interested, the brief is attached. Please let me know off-list if you have questions.

Best,
David
--

Case 2:24-cv-00237-DCN    Document 1    Filed 05/08/24    Page 25 of 37

**David B. Perry**
He | Him | His
Principal Counsel for IP & Litigation
**Red Hat**
T: +1 919 890 8759
M: +1 415 717 7163

---

📕 **Nos. 20-1199 21-707 - Brief for Major American Business Enterprises Supporting Respondents.pdf**
247K

# EXHIBIT D

# Red Hat Company Meeting

June 7, 2023

1



**Gartner DevOps Platforms**

**2023 Magic Quadrant**





Our **vision** is to represent the societies in which we serve, be known for how our **open** and **inclusive** culture creates an equitable associate experience, and drives our **collaboration** and innovation in the market.



3

# Executing on Red Hat's strategy



### ✶ NORTH STAR

▸ **Prioritize** activities

▸ **Improve** with best practices

▸ **Simplify** complexity

▸ **Act** with intent

**HOW**



**STRATEGY & COMPANY OBJECTIVES**

Extend To Edge

Extend To Cloud Services

Evolve Customer Success

Scale Our Core

Strengthen Our Open, Inclusive Culture

Innovate

Optimize

**WHAT**

4

# Our company is going through a significant transformation

For all of this to succeed a culture of **inclusive collaboration** is imperative



Confidential Work Product For Internal Use Only – Do Not Share

# Where are we today on our DEI journey?

**Our industry rating: emergent**

This means that the application of DEI efforts is **inconsistent across the organization.**





**COMPLIANT**

"What do we have to do to stay out of trouble?"

**EMERGENT**

Some disjointed activity exists. DEI is gaining some focus and traction.

**EMBRACING**

DEI is a core business priority and a strategy focused on outcomes is implemented.

**INTEGRATED**

Have begun to embed and drive equity in behaviors, systems, policies, and processes

**EQUITABLE**

Leverages diverse backgrounds, capabilities, viewpoints, etc. to drive business results and value, and monitors key indicators to understand and correct for inequitable outcomes

**Source: DEI Global Workforce Assessment Findings Report**

6

We engaged with Red Hat associates via the Open Decision Hub, an anonymous feedback form, country visits, focus groups, and listening sessions.

## 5 main themes emerged...

| Representation in leadership | Diversity sourcing and inclusive hiring practices | Learning and enablement on DEI for both associates and leaders | Equitable career mobility and rewards experience | Metrics, accountability, and data transparency |
|---|---|---|---|---|



## that influenced our 6 DEI priorities



**Bold DEI Goals**



**Embed into Talent process redesign**



**Data Transparency & Accountability**



**DEI Enablement**



**Build a Globally Inclusive org**



**Accessibility**

# Enterprise–wide representation has continued to increase over time

*Though our workforce has diversified over the years, growth in global sex and race/ethnicity (in U.S.) categories has slowed significantly over the last two years.*

8  Source: Dashboard, 6/2
   Note: Globally, less than 0.5% of associates have not disclosed their sex.



### Global Sex Representation 3 Year Trend

Q1 2021 — Women 25.8%, Men 74.0%
Q1 2022 — Women 27.2%, Men 72.6%
Q1 2023 — Women 27.5%, Men 72.5%

■ Men  ■ Women

### U.S. Racial/Ethnic Representation 3 Year Trend

| Category | Q1 2021 | Q1 2022 | Q1 2023 |
|---|---|---|---|
| Asian Associates | 11.7% | 13.0% | 12.9% |
| Associates of Two or More Races | 1.9% | 2.2% | 2.4% |
| Black or African-American Associates | 4.5% | 5.6% | 5.6% |
| Hispanic or Latinx Associates | 4.9% | 5.3% | 5.6% |
| Indigenous Associates | 0.3% | 0.3% | 0.4% |
| White Associates | 76.0% | 72.6% | 71.7% |
| Opt-Out or Unspecified | 0.6% | 1.0% | 1.5% |

■ Q1 2021  ■ Q1 2022  ■ Q1 2023

Over the next 5 years, we aspire to increase our workforce representation and promote institutional equity.



**Bold DEI Goals**



## By 2028:

# 30%

Women Globally

# 30%

Associates of Color (U.S.)

9

# Here's what you can expect in 2023 – 24



**Bold DEI Goals**

Enterprise DEI goals

Bi-annual reporting





**Embed in Talent process redesign**

Inclusive hiring training

Standard interview rubric



**Data Transparency & Accountability**

Functional action plans

Self ID Relaunch



**DEI Enablement**

Allyship for leaders

Days of learning



**Build a Globally Inclusive org**

Red Hat Passport

EMEA action plans



**Accessibility**

Global accessibility review

Learn more at
[red.ht/dei-strategy](http://red.ht/dei-strategy)

