UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALLAN KINGSLEY WOOD,<br><br>　　　　Plaintiff,<br><br>v.<br><br>RED HAT, INC.,<br><br>　　　　Defendant. | Case No. 2:24-cv-00237-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Red Hat Inc.'s Motion to Compel Arbitration and Stay Proceedings. Dkt. 10.[1]

Plaintiff Allan Wood alleges that his former employer, Red Hat, violated federal employment law when it terminated him in 2023. Dkt. 1, at ¶¶ 54–89. Red Hat argues Wood agreed to a mandatory arbitration provision as part of his employment agreement and, as a result, his current dispute with Red Hat must be heard by an arbitrator rather than the Court. Moreover, Red Hat argues that only an arbitrator may determine whether Wood's employment claims are subject to the arbitration clause in the first place.

Upon review, and for the reasons set forth below, the Court GRANTS Red Hat's Motion and will stay these proceedings pending arbitration.

---

[1] Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

## II. BACKGROUND

Wood worked as a Senior Sales Director for Red Hat[2] from 2015 to 2023. Dkt. 10-1, at 4–6. In the last two years of his employment, Wood participated in a sales incentive plan created by Red Hat. To participate in the plan, Red Hat required its employees to agree to certain terms and conditions, including an arbitration agreement. Dkt. 10-1, at 4.

The agreement provides that "the procedures set out in this Part . . . govern any and all disputes or controversies between Participant and the Company ("Dispute"), including . . . (iv) Participant's employment with the Company." Dkt. 10-8, at 12. Under a subsection titled "Arbitration for United States Employees Only," the agreement continues: "each Participant who is employed in the United States agrees that any Dispute, including but not limited to a Payment Dispute, shall be conducted in accordance with the Employment Arbitration Rules (the "Rules") then in effect of the American Arbitration Association ("AAA") . . . ." *Id*.

Red Hat terminated Wood in the summer of 2023. Dkt. 10-1, at 6. Wood sued in May of 2024. Dkt. 1. In his Complaint, Wood alleges that his termination constituted illegal discrimination based on race, gender, and religion. Dkt. 1, at ¶¶ 54–89. Red Hat responded by filing the instant Motion to Compel Arbitration and Stay Proceedings, arguing that Wood's suit is a "Dispute" covered by the sales incentive plan's terms, and the Court should, therefore, stay proceedings and require the Parties participate in arbitration. Wood responded, arguing the arbitration agreement is unenforceable under the Ending Forced

---

[2] Red Hat is a software company that provides open-source software products to enterprises. Red Hat is a subsidiary of IBM.

Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), and even if it were enforceable, it would not apply to this case anyway. Dkt. 17. Red Hat has replied. Dkt. 20. The matter is now ripe for decision.

### III. LEGAL STANDARD

#### A. Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act

The EFAA renders mandatory arbitration agreements unenforceable against a person "alleging conduct constituting a sexual harassment dispute or sexual assault dispute." 9 U.S.C. § 402(a). The Act defines a "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact," as defined in 18 U.S.C. § 2246 or other applicable law, 9 U.S.C. § 401(3), and a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law," 9 U.S.C. § 401(4).

The applicability of the EFAA is a threshold issue for the Court in this case and that determination cannot be committed or referred to arbitration. 9 U.S.C. § 402(b).

#### B. Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that "any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable' [] and permits a party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. §§ 2, 4). "Employment contracts, except for those covering workers engaged in

transportation, are covered by the FAA." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

The FAA requires the Court to determine: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The party seeking to compel arbitration has the burden of proving each requirement. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). If the Court answers yes to each of the above questions, the FAA requires that the Court enforce the arbitration agreement in accordance with its terms. *Id.*

When evaluating "the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (cleaned up). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). In determining whether the agreement encompasses the dispute at issue, "a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). While "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so," *Id.* at 72 (cleaned up), "virtually every circuit to

have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (cleaned up).

## IV. DISCUSSION

In the instant Motion, Red Hat argues Wood agreed to the sales incentive plan ("Plan") that contained an arbitration agreement. Dkt. 10-1, at 4. Wood does not dispute that he assented to the terms and conditions of the Plan.[3] Instead, Wood argues that: (1) his claims are exempt from the Plan (and arbitration) under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"), (2) the instant claims fall outside the scope of the arbitration agreement, (3) forced arbitration violates his Constitutional Rights, and (4) the FAA has been improperly construed to include employment-related contracts. *See* Dkt. 10-1. In response, Red Hat argues that current Supreme Court precedent does not support Wood's arguments. *See* Dkt. 20. The Court agrees.

### A. Applicability of the EFAA

Wood first argues that the EFAA exempts his claims from arbitration because his claims qualify as a "sexual harassment dispute." Dkt. 17, at 3.[4] The EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual

---

[3] The FAA permits parties to an arbitration agreement to avoid arbitration based on "generally applicable contract defenses like fraud or unconscionability." *Kindred Nursing Centers Ltd. v. Clark*, 581 U.S. 246, 251 (2017) (cleaned up). Wood chose not to do so. Because Wood does not contest the issue of formation, the Court finds that the parties formed a contract to arbitrate under state law. *See Ingle*, 328 F.3d at 1170.

[4] The EFAA applies only to claims accruing on or after March 3, 2022. 136 Stat. 28, Pub. L. 117-90, March 3, 2022. Portions of the conduct alleged by Wood that form the basis of his discrimination claims occurred prior to March 3, 2022. Because the Court finds the EFAA is inapplicable to Wood's case, it need not determine whether the cause of action accrued on or after March 3, 2022.

MEMORANDUM DECISION AND ORDER-5

harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The applicability of the EFAA is a threshold issue which can only be determined by a court. 9 U.S.C. § 402(b). The Court will, therefore, address Wood's EFAA argument first.

Wood's Complaint does not state causes of action for sexual harassment, nor indeed does the word "harassment" appear anywhere in his Complaint. *See generally* Dkt. 1. Undeterred, Wood argues his claim for gender discrimination under Title VII qualifies as an EFAA sexual harassment dispute. Dkt. 17, at 4. In support of this argument, Wood notes that a Title VII plaintiff may prove sex discrimination through sexual harassment, citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986), in support. Specifically, Wood argues his Complaint plausibly asserts a hostile work environment theory of sexual harassment sex discrimination under Title VII. Dkt. 17, at 5.

Wood is correct that a properly pleaded hostile work environment claim would implicate the EFAA. However, not all sex discrimination constitutes sexual harassment. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 669 (2020) ("'Sexual harassment' is conceptually distinct from sex discrimination . . ."). Disparate treatment sex discrimination occurs when an employer subjects an employee to an adverse employment action motivated by his or her sex. 42 U.S.C. § 2000e-2(a)(1). By contrast, an employee is subject to sexual harassment in a hostile work environment when the employee's coworkers are so severely or pervasively hostile to the employee, on account of the employee's sex, that it alters the conditions of employment. *See Meritor Sav. Bank, FSB*, 477 U.S. at 67. An employer can commit—and a Plaintiff can plead—one without the other.

Wood's reliance on Title VII sexual harassment cases is misplaced because he has

MEMORANDUM DECISION AND ORDER-6

pleaded a disparate treatment claim, not a sexual harassment claim. *See* Dkt. 1, at ¶¶ 60–64. Wood alleges that Red Hat conducted mandatory DEI trainings, Dkt. 1, at ¶ 29, that Red Hat filed an amicus brief supporting the respondents in *SFFA v. Harvard*, Dkt. 1, at ¶ 30, and that "[o]n several occasions, managers and executives at Red Hat in comments to Mr. Wood and other employees expressed their dismay at the lack of diversity in the workforce and their desire to achieve certain ratios in the workforce based on race and gender." Dkt. 1, at ¶ 34.

Wood alleges he vocally opposed the use of race or sex in hiring decisions, and that members of Red Hat management disagreed with his opinion. Dkt. 1, at ¶¶ 35–37. Without giving any examples, Wood states that "Red Hat also remarked on the low number of women employed and expressed anti-male rhetoric." Dkt. 1, at ¶ 39. Finally, Wood alleges he was fired along with 21 other individuals (making 22 individuals total, of whom 21 were male and 21 were white) two weeks after Red Hat announced a goal of achieving a workforce of 30% women globally and 30% associates of color in the United States by 2028. Dkt. 1, at ¶ 40–43. These facts led Wood to "[feel] that his termination was a direct result of Red Hat's DEI policies . . . and therefore, he was directly discriminated against because of his race, religion, and gender." Dkt. 1, at ¶ 43.

Nowhere does Wood allege that Red Hat's conduct was so pervasively hostile to Wood on account of his sex that it altered the terms or conditions of his employment. Diversity seminars do not categorically constitute harassment, *see Young v. Colorado Dep't of Corr.*, 94 F.4th 1242, 1246–51 (10th Cir. 2024), nor does disagreement regarding hiring factors among corporate managers or unspecified allegations of "anti-male rhetoric."

MEMORANDUM DECISION AND ORDER-7

What the Complaint *does* state is a claim for disparate treatment based on Wood's status as a man. Because Wood's Complaint does not state a claim for hostile work environment sexual harassment under Title VII, his claim is not a "sexual harassment dispute" for EFAA purposes. *See* 9 U.S.C. § 401(4). The EFAA does not render Wood's agreement to arbitrate voidable.

### B. Constitutionality and Applicability of the FAA

Wood raises several arguments against the constitutionality of the FAA generally and its applicability to his case specifically. If Wood is correct, the FAA's strong presumption of arbitrability and statutory right to compel arbitration do not apply. *See, e.g.*, *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 909, 919 (9th Cir. 2020) (noting that the enforcement and pro-arbitration provisions of the FAA are inapplicable to employment contracts exempted from the FAA under 9 U.S.C. § 1). Wood, however, is wrong.

Wood first argues the FAA violates a panoply of federal rights, including his rights to due process, privileges and immunities, a jury trial, and to petition the Government.[5] Dkt. 17, at 9. None of Wood's arguments find support in controlling authority. First, the FAA does not deny prospective litigants due process.[6] Second, arbitration does not violate

---

[5] Wood also argues that mandatory arbitration violates the separation of powers. Dkt. 17, at 15–17. While Wood expresses frantic worry that arbitration agreements like his will displace the federal courts' place in the Constitutional order, the Court is less concerned. Agreements between private parties rarely—if ever—threaten the separation of powers.

[6] The FAA permits courts to vacate an arbitration award "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the

(continued)

MEMORANDUM DECISION AND ORDER-8

the right to a jury trial.[7] Finally, a stay pending arbitration is not equivalent to denying access to the courts.[8]

Moreover, the Court finds that Wood knowingly and intelligently waived his rights to a judicial forum. Wood argues that he "had no reason to believe that this arbitration clause would waive his right to Due Process and all opportunity for judicial remedy." Dkt. 17, at 10. But the Plan acknowledgment form, which Wood was required to accept to participate in the Plan, states in all capital letters directly above the signature line:

> FURTHER, I ACKNOWLEDGE THAT ALL DISPUTES SHALL BE SETTLED BY ARBITRATION TO BE HELD IN RALEIGH, NORTH CAROLINA, OR AS SET FORTH IN PART III, SECTION 2(C), IN ACCORDANCE WITH THE EMPLOYMENT ARBITRATION RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION (THE "RULES") AS PROVIDED IN THIS

---

arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1–4). "This limited review is designed to preserve due process without unnecessary public intrusion into private arbitration procedures." *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006) (cleaned up). Wood parades a host of sources claiming that arbitrators are biased against the interests of individuals. If the bias he fears materializes, the FAA permits him to seek vacatur in court.

[7] Wood quotes Justice Gorsuch's concurrence in *SEC v. Jarkesy* in support of the proposition that the Seventh Amendment forbids mandatory arbitration. Dkt. 17, at 9. Neither the majority opinion in *Jarkesy* nor Justice Gorsuch's concurrence even remotely supports Wood's assertion. *Jarkesy* concerned whether Congress—not private parties—can assign issues to non-jury factfinders. In the very sentence Wood quotes, Justice Gorsuch wrote that the Due Process and Seventh Amendment cooperate "to limit *how the government* may go about depriving an individual of life, liberty, or property." *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 141 (2024) (emphasis added). Courts in this circuit have routinely rejected claims that the FAA or mandatory arbitration violates the Seventh Amendment on state action grounds (*see, e.g., Saliba v. Am. Airlines Inc.*, 2024 WL 2110348, at *6 (D. Ariz. May 10, 2024)) and waiver grounds (*see, e.g., Ackerman v. Bridgetown Nat. Foods LLC*, 2024 WL 421000, at *3–4 (D. Or. Jan. 19, 2024), *report and recommendation adopted*, 2024 WL 418117 (D. Or. Feb. 5, 2024)).

[8] None of the cases cited by Wood support this proposition. Nor is contracting away one's right to sue strange. Nearly every time parties agree to settlements, waivers, indemnity contracts, or other such agreements, the parties agree that one or both of them will not be permitted to sue the other. Wood provides no basis for distinguishing arbitration agreements from other such routine contracts limiting the right to sue.

MEMORANDUM DECISION AND ORDER-9

>   PLAN, AND THAT I AM WAIVING MY RIGHT TO PRESENT DISPUTES IN A COURT.

Dkt. 10-8, at 15.

Wood also contests the applicability of the FAA to employment disputes generally, although he does so half-heartedly, and for good reason: the Supreme Court has explicitly found that the FAA applies to employment contracts other than transportation workers. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001). Wood argues the Court should reinterpret the FAA's application to employment contracts but does not acknowledge *Circuit City*'s status as the controlling case. Because Wood fails to present any argument as to why *Circuit City* is no longer good law, none of his arguments for ignoring it are persuasive.

Wood argues at great length that the FAA is unconstitutional or inapplicable. But precedent provides no support for his arguments and frequently contradicts them outright. The Court therefore finds the FAA constitutional and applicable in this case.

### C. Arbitrability of Questions Regarding Arbitrability

Wood's final argument against compelling arbitration is a matter of contract interpretation. Wood argues the agreement, by its terms, reaches only disputes regarding the incentive plan and does not cover Wood's discrimination claims. Dkt. 17, at 7–9. Red Hat counters that the issue of arbitrability is itself committed to the arbitrator, and the Court must stay proceedings until the arbitrator has a chance to address the issue first. Dkt. 20, at 8–10.

The Supreme Court has held that, under the FAA, "a court may not decide an

MEMORANDUM DECISION AND ORDER-10

arbitrability question that the parties have delegated to an arbitrator. *Henry Schein,* 586 U.S. at 69. Under the *Henry Schein* regime, a court must first determine whether there is clear and unmistakable evidence that the parties agreed to delegate the issue of arbitrability to the arbitrator. *Id.* If the court finds such clear and unmistakable evidence, the court must compel arbitration unless the party contesting arbitration shows that the delegation itself is unconscionable. *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199 (9th Cir. 2024).

Here, the parties incorporated the AAA arbitration rules into their arbitration agreement. Dkt. 10-8, at 12, 15. The Ninth Circuit has held that between sophisticated parties, "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130. But *Brennan* expressly limited its holding to sophisticated parties. *Id.* at 1131. Whether the same categorical rule should apply to unsophisticated parties is presently an open question. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024).

Wood presents no evidence or argument to show that he is a particularly unsophisticated party. Indeed, such an argument may be difficult to maintain, as Wood worked for Red Hat in the capacity of a "Senior Director" with international business experience. The Court, therefore, finds *Brennan* applicable to this case and further finds that the Plan's incorporation of the AAA rules constitutes clear and unmistakable evidence

that Red Hat and Wood agreed to arbitrate the issue of arbitrability.[9] As Wood presented no argument that the agreement to arbitrate arbitrability is unconscionable, the argument is waived. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).[10]

The Court finds the parties have delegated the issue of arbitrability to the arbitrator and, accordingly, GRANTS Red Hat's Motion to Compel Arbitration.

### D. Remedy

In *Smith v. Spizzirri*, the Supreme Court recently held: "When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." 601 U.S. 472, 475–76 (2024). Accordingly, the Court will stay these proceedings pending arbitration.

## V. CONCLUSION

The parties entered into an agreement which included an arbitration provision. That provision dictates that all disputes be handled by an arbitrator. Furthermore, the threshold question of arbitrability is also subject to arbitration. As a result, the Court will stay these

---

[9] Even assuming that Wood is "unsophisticated," the Court's conclusion would not change. *Brennan* itself found that the "vast majority of the circuits that hold incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or commercial contracts." 796 F.3d at 1130–31 (collecting cases). Even if Wood qualified as unsophisticated, the Court would follow the "vast majority" of circuits aligned with the Ninth Circuit and find that incorporation of AAA rules constitutes clear and unmistakable evidence that the parties delegated the issue of arbitrability to the arbitrator.

[10] To preserve a challenge to a delegation provision's conscionability, "a party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration." *Bielski*, 87 F.4th at 1009.

proceedings so the parties can engage in arbitration consistent with the terms of the Plan, the FAA, and Ninth Circuit precedent.

## VI. ORDER

**IT IS HEREBY ORDERED:**

1. Red Hat's Motion to Compel Arbitration and Stay Proceedings (Dkt. 10) is GRANTED. The case is STAYED pending completion of arbitration proceedings. The parties are directed to file a joint notice concerning the status of the case and how, if at all, they intend to proceed within seven days of the completion of arbitration proceedings.

DATED: September 29, 2025

David C. Nye  
Chief U.S. District Court Judge